### JOAN A. KINNEY *v.* STATE OF CONNECTICUT
### (13687)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO,
HULL and SANTANIELLO, Js.

Argued October 3—decision released November 28, 1989

*Brewster Blackall,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Carl J. Schuman,* former assistant attorney general, for the appellant (state).

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellee (plaintiff).

PETERS, C. J. The dispositive issue in this appeal is whether the legislature intended judges of the Superior Court to come within the jurisdictional confines of the Workers' Compensation Act, General Statutes

§ 31-275 et seq.[1] Following the death of her husband, the Honorable Frank J. Kinney, Jr., the plaintiff, Joan A. Kinney, filed a workers' compensation claim against the state alleging that the decedent's fatal heart condition was causally related to work-induced stress. Ruling that the decedent was an "employee" for the purposes of workers' compensation as defined by General Statutes § 31-275 (5) and that his death arose out of and in the course of his employment, the commissioner for the third district awarded the plaintiff the maximum allowable spousal survivorship benefits under General Statutes § 31-306 (b). In response to the defendant's appeal, pursuant to General Statutes § 31-301, the compensation review division, on its own motion, invoked the procedure authorized by General Statutes § 31-324,[2] to reserve to the Appellate Court the threshold jurisdictional issue of whether a Superior Court judge is an employee as defined by § 31-275 (5). We transferred this reservation to ourselves pursuant to Practice Book § 4023.[3] We answer no.

---

[1] The compensation review division originally reserved two questions for the advice of this court: (1) Is a judge of the Superior Court of Connecticut an "employee" as defined in General Statutes § 31-275 (5)? (2) Does the widow of such a judge making a claim on her own and her children's behalf for survivor dependency benefits under General Statutes § 31-306 satisfy the prerequisite jurisdictional elements necessary to effect entitlement pursuant to General Statutes, chapter 568? Counsel for both parties stipulated at oral argument that, because the existence of an employee-employer relationship is a jurisdictional prerequisite to an award of compensation benefits, the first question presents a threshold issue dispositive of this appeal. We therefore do not reach the second question.

[2] General Statutes § 31-324 states in relevant part: "When, in any case arising under the provisions of this chapter, the compensation review division is of the opinion that the decision involves principles of law which are not free from reasonable doubt and which public interest requires shall be determined by the appellate court, in order that a definite rule be established applicable to future cases, said compensation review division may, on its own motion and without any agreement or act of the parties or their counsel, reserve such case for the opinion of the appellate court. . . ."

[3] Procedurally, we have transferred this reservation to ourselves on two separate occasions. This court initially transferred the appeal to itself, but

The plaintiff sought workers' compensation benefits on the theory that the chronic stress connected with her husband's employment with the defendant contributed to his death. After the defendant contested her claim pursuant to General Statutes § 31-297 (b), the commissioner conducted a formal hearing as provided in General Statutes § 31-298.[4] As a result of that hearing, the commissioner made the following findings of fact, which are not contested in this appeal. The decedent was first appointed to the state bench in 1972. At the time of his death, he had undertaken various administrative assignments in addition to his judicial responsibilities for the adjudication of criminal cases. The decedent was serving as the presiding criminal and administrative judge for the judicial district of New Haven, the chief administrative judge of the criminal division for the entire state and also as the chairman of the Commission to Study Alternate Sentences. The defendant at all times controlled, supervised and regulated the decedent's administrative duties. The decedent, by accepting and performing judicial and administrative duties in return for fair compensation, had entered into an employment relationship with the

---

subsequently returned it to the compensation review division by order on January 19, 1989, for a decision on the plaintiff's motion to dismiss the appeal. On April 6, 1989, the compensation review division denied the plaintiff's motion to dismiss for a procedural defect because, as a threshold matter, the review division could not exercise its competence over the claim until resolution of the jurisdictional challenge. The compensation review division resubmitted its jurisdictional reservation to the Appellate Court and we once again transferred the matter to this court pursuant to Practice Book § 4023.

[4] General Statutes § 31-298 provides in relevant part: "In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry in such manner . . . as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter."

defendant. The unusual work pressures[5] associated with the decedent's excessive administrative workload resulted in chronic stress that contributed to the development of coronary artery disease and exacerbated his preexisting myocardial atherosclerosis.[6] The myocardial infarction that resulted in his death was precipitated in part by the chronic stress associated with his prodigious judicial duties.[7]

On the basis of these findings of fact, the commissioner concluded that the decedent's employment relationship with the defendant constituted a contract of employment for the purposes of the Workers' Compensation Act; General Statutes § 31-275 (5); and that the decedent's death arose out of and in the course of his employment. Accordingly, the commissioner awarded the plaintiff the maximum allowable spousal survivorship benefits under § 31-306 (b) (2).[8]

---

[5] The decedent's immediate supervisor, Chief Court Administrator Aaron Ment, testified and the commissioner so found that " 'five hats were a lot of work to do' and that no single judge since then does all these jobs anywhere in the state."

[6] The fact that a finding of similar causality by the commissioner in the case of a private employee covered by workers' compensation would result in an award of benefits; *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 119, 527 A.2d 664 (1987); sheds no light on the legal issue presently before us regarding the applicability of the Workers' Compensation Act to judges of the Superior Court.

[7] Although the defendant initially contested its liability by claiming that the decedent's heart conditions were preexisting and not causally related to his work, it declined to challenge the causality finding on appeal.

[8] The commissioner ordered the defendant to pay the plaintiff dependent widow $408 weekly plus the applicable cost of living increase as provided in General Statutes § 31-306 (b) (2), any reasonable medical bills incurred as a result of his death, and the statutory burial allowance of $3000. Initially, the commissioner also had awarded the decedent's minor children benefits in the amount of $10 weekly, but that award was later revoked in a corrected finding by the commissioner because survivorship benefits under § 31-306 do not provide for dependency benefits under General Statutes § 31-308b.

In its appeal to the compensation review division, the defendant challenged the validity of the commissioner's determination that the instant case falls within the jurisdiction of the Workers' Compensation Act. The defendant maintained then, as it does now, that a judge of the Superior Court is not an employee for the purposes of workers' compensation, and does not have an employer-employee relationship with the defendant. The review division decided to seek guidance on these questions of law, and propounded the reservation that is presently before us.

We must decide in this case whether the legislature intended the Workers' Compensation Act to confer jurisdiction upon the commissioner to award benefits to the plaintiff. Even though the plaintiff has presented a factual record that warrants sympathetic consideration of her claims, her entitlement to relief cannot transcend the jurisdictional limits of the statute under which she seeks recovery. Once an issue of subject matter jurisdiction is raised,[9] the court must dispose of this legal question as a threshold matter. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556–57, 529 A.2d 666 (1987); *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985). " ' "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings." ' *Chzrislonk* v. *New York, N.H. & H. R. Co.,* 101 Conn. 356, 358, 125 A. 874 (1924)." *Cahill* v. *Board of Education,* supra; *Pet* v. *Department of Health Services,* 207 Conn. 346, 351, 542 A.2d 672 (1988). The applicability of these principles is no less compelling in the instant case where the limited and statutory jurisdiction at issue is the legislative will as expressed in the Workers' Compensation Act. Although the Workers' Com-

---

[9] Both the defendant and the compensation review division on its own motion raised the question of subject matter jurisdiction in the instant case.

pensation Act "should be broadly construed to accomplish its humanitarian purpose"; *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117, 411 A.2d 924 (1979); *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 541, 494 A.2d 555 (1985); its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries. *Castro* v. *Viera,* 207 Conn. 420, 435, 541 A.2d 1216 (1988); *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* supra, 541–42; *Jester* v. *Thompson,* 99 Conn. 236, 238, 121 A. 470 (1923). "The act is not triggered by a claimant until he brings himself within its statutory ambit." *Castro* v. *Viera,* supra, 433.

The plaintiff would have us resolve the jurisdictional issue in this case by deferring to the commissioner's findings of fact. This we cannot do. We recognize that the commissioner found that the decedent's judicial duties amounted to a contractual relationship with the defendant such that he was an "employee" for purposes of workers' compensation as defined by § 31-275 (5). While it is correct that "[b]ecause only employees are entitled to compensation under the act . . . coverage must arise from a contract of employment, either express or implied"; *Blancato.* v. *Feldspar Corporation,* 203 Conn. 34, 38, 522 A.2d 1235 (1987); *Sibley* v. *State,* 89 Conn. 682, 686–87, 96 A. 161 (1915); our jurisdictional inquiry is not limited to the commissioner's factual finding of the decedent's contract of employment with the defendant. The elements of subject matter jurisdiction are *"dependent upon* both *law* and *fact."* (Emphasis added.) *Castro* v. *Viera,* supra, 433. Although the plaintiff correctly asserts that the power and duty of determining facts rests on the commissioner as the trier of facts; *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988); the conclusions drawn by the commissioner cannot stand when they result from an incorrect application of the law. Id.; *Adzima* v. *UAC/Norden Division,* supra, 118.

The commissioner exercises jurisdiction only " 'under the precise circumstances and in the manner particularly prescribed by the enabling legislation.' *Heiser* v. *Morgan Guaranty Trust Co.,* 150 Conn. 563, 565, 192 A.2d 44 (1963)." *Castro* v. *Viera,* supra, 427–28.[10] The parties cannot confer jurisdiction upon the commissioner by agreement, waiver or conduct. Id., 430; *Jester* v. *Thompson,* supra, 238. The plaintiff may invoke the remedy provided under the Workers' Compensation Act only if her decedent, as a matter of law, satisfies the requisite jurisdictional standard of "employee" as defined by the legislature in § 31-275 (5).[11] The legal question before us, therefore, is whether the legislature intended to include judges of the Superior Court within § 31-275 (5).

We begin our examination of the scope of § 31-275 (5) by recourse to the accepted rules of statutory construction. We look first to the text of § 31-275 (5) itself. Because § 31-275 (5) consists of a functional definition with expressly delineated exceptions, for purposes of clarity, we will focus first on the operative meaning before integrating the exceptions into our analysis. Section 31-275 (5) defines "employee" in relevant part as "any person who has entered into or works under any contract of service or apprenticeship with an employer . . . . " This language, on its face, expresses no clear legislative intent as to whether a member of the judi-

[10] Like courts of probate; *In re Juvenile Appeal (85-BC),* 195 Conn. 344, 366–67 n.18, 488 A.2d 790 (1985); and administrative agencies; *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971); workers' compensation commissioners must act strictly within their statutory authority and cannot unilaterally modify, abridge or otherwise change such provisions because the act's enabling legislation does not expressly grant that power. *Castro* v. *Viera,* 207 Conn. 420, 428–29, 541 A.2d 1216 (1988).

[11] General Statutes § 31-275 (6) defines "employer" for purposes of establishing liability under the act. It is uncontested that the defendant may be found to be an "employer" under § 31-275 (6).

iary is a covered "employee." In ascertaining legislative intent, however, the legislature is presumed to know the history of a statute as judicially construed. *Nichols* v. *Warren,* 209 Conn. 191, 202 n.8, 550 A.2d 309 (1988); *Peck* v. *Jacquemin,* 196 Conn. 53, 71, 491 A.2d 1043 (1985). Our decisions concerning the eligibility of individuals working in the public sector for workers' compensation benefits have long distinguished between public officers and public employees, and have held that public officers not expressly included within the definition provided by § 31-275 (5) are not "employees" for the purposes of the act. *McDonald* v. *New Haven,* 94 Conn. 403, 417–18, 109 A. 176 (1920); *Sibley* v. *State,* supra, 685.

It is undisputed that judges of the Superior Court meet the three part test that determines the existence of a public office: " '(1) an authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government. *Kelly* v. *Bridgeport,* 111 Conn. 667, 671, 151 A. 268 [1930]; Mechem, Public Officers § 1.' " *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 198, 491 A.2d 1058 (1985). The Connecticut constitution so provides. With respect to the first and third prongs, article second of the Connecticut constitution, in dividing the broad powers of government into three distinct branches, confers "a separate [judicial] magistracy" upon a "distinct department," the judiciary; *Pellegrino* v. *O'Neill,* 193 Conn. 670, 679, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984); *Heiberger* v. *Clark,* 148 Conn. 177, 185, 169 A.2d 652 (1961); while article fifth, § 1 describes its organizational structure and reiterates that its powers and jurisdiction shall be defined by law. With respect to the second prong, article fifth, § 2 provides in relevant part: "They shall hold their offices for the term of eight years . . . . " Moreover, the judiciary's right

to compensation as public officers falls clearly within the distinction contemplated in *Sibley* v. *State,* supra, 685, where this court denied workers' compensation benefits to a sheriff because, as a public officer, his right to compensation " 'belongs to him not by force of any contract, but because the law attaches it to the office.' "[12] Id., quoting F. Mechem, supra, §§ 855 and 856.

The distinction between public employees and public officers, for the purpose of workers' compensation, finds textual recognition in the jurisdictional definitions contained in the Workers' Compensation Act. Section 31-275 (5) expressly includes some public officers, but not judges, within the class of those eligible for workers' compensation by defining "employee" in relevant part to "include any person elected to serve as a member of the general assembly of this state and . . . any salaried officer or paid member of any police department or fire department and any elected or appointed official or agent of any city, town or borough, upon vote of the proper authority of such city, town or borough . . . . " This enumeration would have been wholly unnecessary had these public officials constituted employees under the analysis of *Sibley* v. *State,* supra. Because, for purposes of statutory construction, we presume a purpose behind every sentence, clause or phrase in a legislative enactment; *Peck* v. *Jacquemin,* supra, 66; we must attach significance to the legislature's intention to grant workers' compensation only to those public officers expressly described in

---

[12] Attorney General Carl R. Ajello confirmed this distinction in an informational opinion in the form of a letter to State Comptroller J. Edward Caldwell dated January 21, 1976. In response to an inquiry whether a Superior Court judge, suspended from service by the Judicial Department pending disposition of a criminal charge against him, is entitled to his regular salary, the attorney general stated that "[a] Judge of the Superior Court is one who holds an office," and that his "right to a salary depends upon the legal title to the office and not upon the performance of the work."

§ 31-275 (5). Statutory itemization indicates that the legislature intended the list to be exclusive. *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985).

The legislative history of the evolution of the definition of "employee" under the Workers' Compensation Act supports our conclusion that the legislature intended the express inclusions enumerated in § 31-275 (5) to be exclusive. Until 1921, the definition of "employee" necessary to invoke workers' compensation had been limited to "any person who has entered into or works under any contract . . . ." General Statutes (1918 Rev.) § 5388. When we construed this contractual language to deny benefits to a member of a municipal fire department in *McDonald* v. *New Haven,* supra, 417–18, however, the legislature expressly amended the definition to bypass the decisional law for a specific category of public positions. See General Statutes (1918 Rev.) § 5388, as amended by chapter 306, § 11 of the Public Acts of 1921. Each subsequent addition to the category of public positions evinces an intention on the part of the legislature carefully to circumscribe the expansion of named beneficiaries.[13] The telling omission of judges of the Superior Court from this exclusive list of expressly included exceptions is persuasive evidence that the legislature did not intend the scope of § 31-275 (5) to embrace the judiciary.

---

[13] For example, the legislature expanded the definition of "employees" to include members of the General Assembly in 1972. The legislative history of the debate surrounding passage of that legislation is particularly instructive on the point that the legislature was aware that state officers do not receive their salary as a matter of contract of service and would thus need a special amendment bypassing decisional law in order to qualify for workers' compensation benefits. Representative Gerald F. Stevens remarked: "I would submit to you that once you take the oath of office you don't ever have to come here and you are entitled to your pay." 15 H.R. Proc., Pt. 6, 1972 Sess., p. 2494A-55.

Our conclusion that the distinction between employment and public office is firmly embedded in our law of workers' compensation does not conflict with the proposition that, in other circumstances, a public official may be considered an employee. "[A] municipal position, for certain purposes, may constitute a 'public office' and, for others, mere employment." *Murach* v. *Planning & Zoning Commission,* supra, 200; *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 426, 209 A.2d 674 (1965). With respect to judges of the Superior Court, and the Probate Court administrator, the legislature has determined, as General Statutes § 45-29u[14] indicates, that they have the same entitlement to group life and health insurance as is expressly afforded to other state employees and members of the General Assembly by General Statutes §§ 5-257[15] and 5-259[16]

---

[14] General Statutes § 45-29u provides in relevant part: "PROBATE COURT ADMINISTRATOR, SALARY AND BENEFITS. (a) The probate court administrator shall be paid by the judicial department and shall be compensated in the same manner and amount as a superior court judge as provided in section 51-47. . . .

"(b) The probate court administrator shall receive: (1) Retirement benefits provided in sections 51-49 to 51-50b, inclusive, and section 51-51; (2) life insurance benefits provided in section 5-257; (3) medical insurance benefits as provided in section 5-259; and (4) any other benefits which may be established for superior court judges by the general assembly or by the judicial department."

[15] General Statutes § 5-257 provides in relevant part: "GROUP LIFE INSURANCE. (a) The comptroller, with the approval of the attorney general and of the insurance commissioner, may revise the group insurance plan for employees of the state by amendment of any existing group life insurance policy or policies or by procuring from one or more life insurance companies authorized to do business in Connecticut a policy or policies of group life insurance covering employees of the state. Each employee in active state service shall be eligible for insurance under this section, provided he shall have completed more than six months' continuous state service, and each member of the general assembly shall be eligible for insurance under this section, six months after taking office."

[16] General Statutes § 5-259 provides in relevant part: "HOSPITALIZATION AND MEDICAL AND SURGICAL INSURANCE PLAN. ELIGIBILITY. (a) The comptroller, with the approval of the attorney general and of the insurance com-

of the State Personnel Act. Workers' compensation is not among the benefits enumerated in § 45-29u.

It bears noting, finally, that the legislature has enacted comprehensive provisions concerning benefits specifically for judges. General Statutes, chapter 872. These statutes not only provide annual salaries; General Statutes § 51-47;[17] but include specific entitlements to disability retirement; General Statutes § 51-49; retirement salary and allowance to surviving spouses; General Statutes § 51-49f; and pensions for surviving spouses and children. General Statutes § 51-51. The legislature conspicuously failed to include workers' compensation within the benefits conferred upon judges by chapter 872. Since the legislature is presumed to exercise its statutory authority with knowledge of existing statutes and with the intention of creating one consistent body of law; *Shortt* v. *New Milford Police Department,* 212 Conn. 294, 302, 562 A.2d 7 (1989); *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 621, 529 A.2d 692 (1987); it is reasonable to infer that the legislature would not have intended, sub silentio, to confer such a benefit upon the judiciary. The more rational explanation for the legis-

---

missioner, shall arrange and procure a group hospitalization and medical and surgical insurance plan or plans for (1) state employees, (2) members of the general assembly who elect coverage under such plan or plans, (3) participants in an alternate retirement program who meet the service requirements of section 5-162 or subsection (a) of section 5-166, and (4) anyone receiving benefits from any state-sponsored retirement system, except the teachers' retirement system, the municipal employees retirement system, the general assembly pension system and the probate judges and employees retirement system."

[17] As the state maintains, it is clear as a matter of law that a statutorily mandated salary, such as provided for judges in General Statutes § 51-47, does not create a private contract. "[T]here exists a 'well-established presumption' against finding that a statute creates private vested contractual rights absent a clear showing of legislative intent to the contrary. *Taliaferro* v. *Dykstra,* 434 F. Sup. 705, 710–11 (E.D. Va. 1977)." *Pineman* v. *Oechslin,* 195 Conn. 405, 410–11, 488 A.2d 803 (1985).

lature's silence is that the legislature concluded that it would be duplicative to provide both disability benefits and workers' compensation benefits to these public officers.

To construe § 31-275 (5) to include members of the judiciary within the class of those entitled to receive workers' compensation benefits would constitute a radical departure from established policy. We will not infer that the legislature intended to enact a significant change in existing law without an unequivocally expressed manifestation of legislative intent. *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988); *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 667, 103 A.2d 535 (1954). Were this court to award compensation benefits to the spouse of a deceased judge, we "would be legislating by adding a new class to the coverage of this act which proclaims its limited scope." *Castro* v. *Viera,* supra, 435. This we cannot do.

In response to the reservation from the compensation review division, whether a judge of the Superior Court is an "employee" for purposes of entitlement to workers' compensation as defined by § 31-275 (5), we answer no.

In this opinion the other justices concurred.