Joan A. KINNEY, Plaintiff,

v.

State of CONNECTICUT, Denise L. Nappier, and Nancy Wyman, Defendants.

No. 3:08CV01333(DJS).

United States District Court, D. Connecticut.

June 5, 2009.

Roger J. Frechette, Frechette & Frechette, New Haven, CT, for Plaintiff.

Michael Robert Bullers, Attorney General's Office, Hartford, CT, for Defendants.

### *MEMORANDUM OF DECISION AND ORDER*

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Joan A. Kinney ("the Plaintiff"), the executrix of the estate of Frank J. Kinney, Jr., brings this action against the defendants, the State of Connecticut, Denise L. Nappier, and Nancy Wyman ("the Defendants"), alleging interference with salary and benefit rights under Connecticut law, violations of Article 1 § 10 of the U.S. Constitution, and violations of the Fifth, Eleventh, and Fourteenth Amendments to the U.S. Constitution. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Defendants have moved to dismiss the Plaintiff's complaint. (Dkt. # 12). For the reasons set forth herein, the Defendants' motion to dismiss (**dkt. # 12**) is **GRANTED.**

### I. MOTION TO DISMISS STANDARD

A Rule 12(b)(1) motion seeks dismissal for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "When considering a motion to dismiss for lack of subject matter jurisdiction ..., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Nevertheless, "[t]he burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) (internal quotation marks omitted). That is, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos,* 140 F.3d at 131. A court may consider affidavits and other material beyond the pleadings to resolve jurisdictional questions under Rule 12(b)(1). *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001).

A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

### II. FACTS[1]

Frank J. Kinney, Jr. married the Plaintiff on August 28, 1954. He graduated

---

1. The Court notes that the background of this

case includes a number of prior lawsuits in

from Yale College in 1956 and from Yale Law School in 1959, and he maintained a law practice in New Haven, Connecticut until 1972.

In 1972, Frank J. Kinney, Jr. ("Judge Kinney") was appointed as a judge in the judicial system of the State of Connecticut. In 1983, Judge Kinney was assigned the duties of Presiding Judge, Criminal, in the New Haven Judicial District. In 1984, Judge Kinney was assigned to perform the duties of Chief Administrative Judge of the Criminal Division, which required him to supervise the work of all the judges throughout Connecticut on all criminal matters. Judge Kinney also was appointed as the Chairperson of the Civil Desk Book. On February 8, 1985, Judge Kinney was appointed to perform the duties of Administrative Judge for the New Haven Judicial District, which controlled the work of all the judges in civil, criminal, family, and juvenile court. Thereafter, Judge Kinney was appointed as the Chairman of the Grand Jury Panel so that he could structure, innovate, and supervise the statewide grand jury procedures. Judge Kinney then was appointed as the Chairman of the Commission to Study Alternate Sentencing, and, during his vacation time, went to a symposium in Colorado in order to obtain the requisite knowledge to implement a program in Connecticut. Judge Kinney was also appointed as the Chairman of the Magistrates' Program in order to expedite the hearing of certain types of cases.

On September 28, 1986, Judge Kinney died from a heart attack. On December 16, 1986, the Plaintiff filed a workers' compensation claim pursuant to Conn. Gen. Stat. § 31–294c(b).[2] It was the Plaintiff contention that Judge Kinney's heart attack was caused by his work as a judge. On December 26, 1986, the State of Connecticut contested liability pursuant to Conn. Gen.Stat. § 31–297(b), contending that Judge Kinney's heart attack was not causally related to his work, but may have been caused by a pre-existing condition.

On December 11, 1987, the State of Connecticut filed a motion to dismiss the workers' compensation claim, arguing that judges were not "employees" as defined under the law governing workers' compensation, and thus the workers' compensation commissioner lacked subject matter jurisdiction over the claim. The workers' compensation commissioner denied this motion and, on October 27, 1988, awarded the Plaintiff the maximum allowable spousal survivorship benefits.

The State of Connecticut appealed the workers' compensation commissioner's decision with regard to the jurisdictional issue. Ultimately, the question was answered by the Connecticut Supreme Court, which agreed with the State of Connecticut's position that judges were not "employees" under the workers' compensation law. *See Kinney v. State*, 213 Conn. 54, 55, 566 A.2d 670 (1989). The Connecticut Supreme Court noted that its "decisions concerning the eligibility of individuals working in the public sector for workers' compensation benefits have long distinguished between public officers and

---

the state and federal courts, and proceedings before Connecticut administrative agencies. In her complaint, the Plaintiff refers and cites to the decisions of these courts and agencies. Therefore, the Court finds that the Plaintiff has incorporated by reference these decisions, which the Court may review and discuss here without converting the motion to dismiss into

a motion for summary judgment. *See Estate of Axelrod v. Flannery*, 476 F.Supp.2d 188, 198–201 (D.Conn.2007).

2. The Defendants represent that the workers' compensation claim actually was filed pursuant to Conn. Gen.Stat. § 31–294, as § 31–294c(b) was not yet in existence in 1986.

public employees, and have held that public officers not expressly included within the definition provided by § 31–275(5) are not 'employees' for the purposes of the act." *Id.* at 61, 566 A.2d 670. The Connecticut Supreme Court then went on to state that "[i]t is undisputed that judges of the Superior Court meet the ... test that determines the existence of a public office...." *Id.* As such, the Connecticut Supreme Court concluded that judges were not "employees" for purposes of entitlement to workers' compensation. *Id.* at 66, 566 A.2d 670.

Over the next few years, the Plaintiff made numerous attempts to obtain additional benefits. She first returned to the workers' compensation review board, which ruled against her. She filed an appeal from that decision to the Connecticut Appellate Court, which ruled against her in an unpublished decision. The plaintiff then filed a petition for certification to appeal to the Connecticut Supreme Court and a petition for certiorari to the United States Supreme Court, both of which were unsuccessful. *Kinney v. State*, 215 Conn. 807, 576 A.2d 538 (1990); *Kinney v. Connecticut*, 498 U.S. 898, 111 S.Ct. 251, 112 L.Ed.2d 209 (1990).

The Plaintiff also filed an action in federal court against the Connecticut Judicial Department, then-Chief Justice of Connecticut Supreme Court Ellen A. Peters, then-Chief Court Administrator of the Connecticut Superior Court Aaron Ment, the Comptroller for the State of Connecticut, and the Treasurer for the State of Connecticut, alleging that the denial of the workers' compensation benefits impaired Judge Kinney's employment contract with the State of Connecticut and, pursuant to 42 U.S.C. § 1983, violated her Fifth and Fourteenth Amendment rights. The Honorable Peter C. Dorsey dismissed the Plaintiff's claims. The Plaintiff appealed.

The Second Circuit upheld Judge Dorsey's decision, holding that the State of Connecticut did not violate the Contract Clause of the U.S. Constitution, and that the Plaintiff's Section 1983 claim was properly dismissed because the Fifth and Fourteenth Amendments only apply to property interests recognized by state law. *Kinney v. Conn. Judicial Dep't*, 974 F.2d 313 (2d Cir.1992). In addition, the Plaintiff filed an action in state court that was nearly identical to the action filed in federal court. The Superior Court dismissed this action on the basis that the Plaintiff's claims were barred by the doctrine of sovereign immunity. *See Kinney v. State Judicial Dep't*, No. CV91–395815, 1992 WL 394533 (Conn.Super.Ct. Dec. 22, 1992).

On July 29, 1994, the Plaintiff filed a negligence claim with the Office of the Claims Commissioner, seeking permission to sue the State of Connecticut. Under normal circumstances, the Plaintiff would be barred from bringing this claim because claims brought before the claims commissioner must be presented within one year after they accrue. *See* Conn. Gen.Stat. § 4–148(a). The Plaintiff alleged, however, that she could file her otherwise untimely claim because S.A. 94–13, § 1, which had been approved by Connecticut's legislature on June 7, 1994, provided her with authorization to present her claim to the claims commissioner by October 1, 1994. After a hearing on the merits, the claims commissioner denied permission for the Plaintiff to bring a negligence action against the state. The legislature subsequently rejected the claims commissioner's recommendation and authorized the Plaintiff to institute an action for damages against the state.

On October 1, 2001, the Plaintiff filed a single count complaint in Connecticut Superior Court, alleging that the State of Connecticut had been negligent in assign-

ing an extraordinary amount of work to Judge Kinney, which resulted in excessive stress and, ultimately, his death. On November 29, 2001, the state moved to dismiss the action for lack of subject matter jurisdiction, arguing that the Plaintiff's action was not timely under § 4–148(a) and that S.A. 94–13, which had extended the time in which the Plaintiff could bring her claim against the state, was an unconstitutional exclusive public emolument or privilege in violation of article first, § 1, of the Connecticut Constitution. The motion to dismiss was denied. *See Kinney v. State,* No. CV010456273S, 2003 WL 21324824 (Conn.Super.Ct. May 29, 2003).

Thereafter, on November 10, 2004, the State of Connecticut moved for summary judgment, arguing that S.A. 94–13 violated the prohibition against "exclusive public emoluments or privileges from the community" under the Connecticut Constitution and, consequently, the claims commissioner lacked authority to entertain the Plaintiff's untimely claim. The Superior Court found that S.A. 94–13 did not serve a valid public purpose and thus violated the Connecticut Constitution. *See Kinney v. State,* No. DNCV010456273S, 2006 WL 2578708, at *4 (Conn.Super.Ct. Aug. 18, 2006). As a result, the Superior Court concluded that S.A. 94–13 could not extend the time in which the Plaintiff could present her claim against the state, and granted the state's motion for summary judgment. *Id.* at *4–5.

The Plaintiff appealed the decision of the Superior Court. On March 4, 2008, the Connecticut Supreme Court affirmed the decision of the Superior Court. *See Kinney v. State,* 285 Conn. 700, 941 A.2d 907 (2008). The Connecticut Supreme Court found that S.A. 94–13 had conferred an exclusive public emolument on the Plaintiff, and thus violated the Connecticut Constitution. *See id.* at 716, 941 A.2d 907.

Consequently, the Plaintiff was barred from bringing a negligence action against the state. She subsequently filed this action against the State of Connecticut and against the Treasurer (Denise L. Nappier) and Comptroller (Nancy Wyman) for the State of Connecticut in their official capacities.

### III. DISCUSSION

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants seek dismissal of the Plaintiff's complaint in its entirety. The Court admits that, upon review of the complaint, it has not found the Plaintiff's claims to be entirely comprehensible. In the Court's view, however, the Plaintiff's allegations arise from two distinct incidents. The first incident involves the initial workers' compensation proceedings from the 1980s. During the workers' compensation proceedings, the state had argued that judges were not employees for the purposes of workers' compensation. According to the Plaintiff, however, the state did not raise this argument in a timely manner. Thus, the Plaintiff maintains that her rights were violated.

The second incident involves the Connecticut Supreme Court's 2008 decision that S.A. 94–13 had conferred an exclusive public emolument on the Plaintiff, and thus violated the Connecticut Constitution. This decision effectively precluded the Plaintiff from bringing a negligence claim against the state. The Plaintiff maintains that, through this decision, the Connecticut Supreme Court, "acting thereon by" the Defendants, violated her rights. For both counts, the Plaintiff seeks money damages, punitive damages, attorney's fees, costs, and such other relief the Court deems just and proper. In the first paragraph of Count One, the Plaintiff also states that she seeks declaratory and equitable relief.

The Plaintiff's claims fail for a number of reasons. The Court shall discuss the relevant incidents individually, addressing what, in the Court's view, are the main reasons the Plaintiff's claims cannot proceed.

## A. WORKERS' COMPENSATION PROCEEDINGS

During the workers' compensation proceedings in the 1980s, the state had argued that judges were not employees for the purposes of workers' compensation ("the Workers' Compensation Argument"). The Plaintiff's now argues that the state did not raise the Workers' Compensation Argument in a timely manner, and because the Connecticut Supreme Court agreed with the Workers' Compensation Argument, her constitutional rights were violated.

▇▇▇▇ To begin, the Court finds that res judicata bars any claim with regard to the Workers' Compensation Argument. "Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir.2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). "Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated." *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983). "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.2000).

It is undisputed that the dispute over Judge Kinney's entitlement to workers' compensation worked its way up through the state court system; in 1989, the Connecticut Supreme Court issued a decision that effectively precluded the Plaintiff from receiving these benefits. It is also undisputed that the Plaintiff filed a federal lawsuit in this District, claiming that the denial of workers' compensation benefits had impaired Judge Kinney's employment contract with the state and violated her Fifth and Fourteenth Amendment rights. The federal lawsuit was dismissed by the District Court, and the Second Circuit affirmed the dismissal in 1992.

▇▇▇ The Plaintiff has presented no reason why the allegations here are not barred by, at a minimum, the prior federal lawsuit. That lawsuit involved: (1) an adjudication on the merits; and (2) essentially the same parties to this case. The question then becomes whether the claims asserted in this case were, or could have been, raised in the prior action. The answer to this question is "yes." There is no reason why, when arguing the theories under which that the state allegedly violated constitutional rights in the prior federal lawsuit, the Plaintiff also could not have raised the theory she brings here, i.e., that the state violated her constitutional rights by not presenting the Workers' Compensation Argument in a timely manner. The Court sees nothing that would have pre-

vented or delayed her from doing so. Because the Plaintiff certainly could have raised this argument in her prior lawsuit, res judicata bars her from raising it in this case. Consequently, with regard to the Plaintiff's allegations as to the workers' compensation proceedings, the motion to dismiss must be granted.

■ In addition, the Plaintiff maintains that she has brought her complaint pursuant to 42 U.S.C. § 1983. Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing *Baker v. McCollan*, 443 U.S. 137,

144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

■ As the Defendants point out, however, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. 2304. "The Eleventh Amendment bars such suits unless the State has waived its immunity, ... or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* (internal citation omitted). "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity. . . ." *Id.* In addition, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Id.* at 71, 109 S.Ct. 2304 (internal citation omitted).[3] Thus, the Plaintiff's allegations

---

3. The Court points out that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *see Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The relevant inquiry is "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). This exception is limited to prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)

("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, ... and may not include a retroactive award which requires the payment of funds from the state treasury . . . ." (internal citations omitted)).

Here, however, the Court sees no practical request for such prospective injunctive relief, or indeed any injunctive relief, despite the "equitable relief" language in the complaint. As the Supreme Court has explained, "[e]quitable relief must mean something less than all relief." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal quotation marks omitted). "Instead, ... the term 'equitable relief' ... must refer to those categories of relief that were *typically* available in equi-

as to the workers' compensation proceedings also fail for this reason.

■ In addition, the Plaintiff's allegations here are barred by the applicable statute of limitations. The Plaintiff maintains that her allegations with regard to the Workers' Compensation Argument are brought pursuant to 42 U.S.C. § 1983. "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions'...." *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). Under Connecticut law, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen.Stat. § 52–577. Thus, "[w]hen a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998); *see Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir.1994) (applying Conn. Gen.Stat. § 52–577 to § 1983 actions). That being said, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (emphasis in original).

■ The "acts complained of" here are the Workers' Compensation Argument made by the State of Connecticut in 1987 or, conceivably, the 1989 decision from the Connecticut Supreme Court, which found the Workers' Compensation Argument to be persuasive. The time for the Plaintiff to file her § 1983 claim expired in 1990 or, at the latest, 1992. The Plaintiff had a complete and present cause of action in either 1987 or 1989, and the Court discerns no reason for deferring the accrual date. *See Wallace,* 549 U.S. at 388, 127 S.Ct. 1091 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action[,] .... that is, when the plaintiff can file suit and obtain relief...."). Consequently, the Plaintiff's allegations as to the workers' compensation proceedings also fail because they are barred by the statute of limitations.

■ Furthermore, aside from the above-mentioned "technical" reasons barring the Plaintiff's claims, the Court points out that, with regard to the legal merits, the Plaintiff has failed to state a claim upon which relief can be granted. The Plaintiff argues that the state violated Conn. Gen.Stat. § 31–294c(b) by not raising the Workers' Compensation Argument

ty...." *Id.* at 210, 122 S.Ct. 708 (internal quotation marks omitted). For example, requesting to impose personal liability on a defendant for a contractual obligation to pay money is a type of relief that was not typically available in equity. *Id.* Rather, "[a] claim for money due and owing under a contract is quintessentially an action at law." *Id.* (internal quotation marks omitted). "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."

*Id.* "And [m]oney damages are, of course, the classic form of *legal* relief." *Id.* (internal quotation marks omitted). "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708. A plaintiff could receive such equitable relief via "the imposition of a constructive trust or equitable lien on particular property." *Id.* at 211, 122 S.Ct. 708. Such is not the situation in this case, where the Plaintiff seeks monetary relief for the Defendants' alleged breaches of their legal duties.

in a timely manner, i.e., on or before the twenty-eighth day after receiving written notice of the claim. The Court takes note, however, that during the relevant time period here (i.e., 1986), an earlier version of Conn. Gen.Stat. § 31–297(b), not § 31–294c(b), governed this issue. This earlier version of Conn. Gen.Stat. § 31–297(b) provided as follows:

Whenever liability to pay compensation is contested by the employer, he shall file with the compensation commissioner, on or before the twentieth day after he has received a written notice of claim, a notice in accord with a form prescribed by the commissioners stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested, and a copy thereof shall be sent to the employee.

It appears that the only significant difference between the relevant portions of the currently controlling statute and the earlier version of the controlling statute in 1986 is the time period in which to contest liability. In 1986, an employer had twenty, not twenty-eight, days to contest liability.

The state did, in fact, contest liability to pay compensation within the applicable time period. On December 16, 1986, the state argued that Judge Kinney's heart attack was not causally related to his work as a judge. Thus, although it is true that the state did not bring up specifically the Workers' Compensation Argument within the applicable twenty-day time period, the state did contest liability in a timely manner.

Moreover, the state was not required to raise the Workers' Compensation Argument within the time period set forth in the statute. As the Connecticut Supreme Court noted in 1989, the Workers' Compensation Argument involved the question "whether the legislature intended the Workers' Compensation Act to confer jurisdiction upon the commissioner to award benefits" to state judges such as the plaintiff. *Kinney*, 213 Conn. at 58, 566 A.2d 670. That is to say, the "issue of subject matter jurisdiction [had been] raised...." *Id.* The Connecticut Supreme Court has described Connecticut's law regarding subject matter jurisdiction as follows:

[S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it ... and a judgment rendered without subject matter jurisdiction is void. ... Further, it is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court.... Indeed, [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented.... The court must fully resolve it before proceeding further with the case.... We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary.... [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction.... The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal.

*In re Deleon J.*, 290 Conn. 371, 376–77, 963 A.2d 53 (2009) (internal citation and quotation marks omitted).

The rules regarding subject matter jurisdiction are "not limited to courts. Administrative agencies are tribunals of limited jurisdiction and their juris-

diction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro v. Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988).[4] Thus, although it is true under Connecticut law that employer who fails to timely contest liability for an alleged injury is conclusively presumed to have accepted the compensability, "this conclusive presumption does *not* prevent an employer from contesting liability on the basis that the commissioner lacks subject matter jurisdiction." *Del Toro v. City of Stamford*, 270 Conn. 532, 543, 853 A.2d 95 (2004) (emphasis in original). "In other words, the employer can always contest the existence of 'jurisdictional facts.'" *Id.*

The Workers' Compensation Argument raised by the state challenged the subject matter jurisdiction of the compensation commissioner. As a result, the state could raise this argument at any time, regardless of the time constraints set forth in the statute. Therefore, the Plaintiff's allegation that the state raised the Workers' Compensation Argument in an untimely manner is incorrect, and as such, is not sufficient to support her claims here. Therefore, for all the reasons stated above, with regard to the Plaintiff's allegations regarding the workers' compensation proceedings and the Workers' Compensation Argument, the Defendants' motion to dismiss is granted.

## B. CONNECTICUT SUPREME COURT'S 2008 DECISION RE: S.A. 94–13

The Plaintiff also alleges that her constitutional rights were violated by the Con-

necticut Supreme Court's 2008 decision regarding S.A. 94–13. In that decision, the Connecticut Supreme Court held that S.A. 94–13, which had allowed the Plaintiff to bring her otherwise untimely negligence claim against the state, conferred an exclusive public emolument on the Plaintiff, and thus violated the Connecticut Constitution. The Court notes that the discussion above about the applicability of 42 U.S.C. § 1983 to the state and Eleventh Amendment immunity also applies to the discussion here. On that basis alone, the claims about the Connecticut Supreme Court's 2008 decision regarding S.A. 94–13 also fail and must be dismissed.

▉▉▉▉ The Court believes, however, that there is a more fundamental reason that the Plaintiff's claims here are improper and must be dismissed. "Where a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker–Feldman* doctrine in certain circumstances." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir.2005); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15, 44 S.Ct. 149, 68 L.Ed. 362 (1923). "*Rooker* and *Feldman* . . . established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments. . . ." *Hoblock*, 422 F.3d at 84. The *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-

---

**4.** The subject matter jurisdiction limitations that apply to state courts and agencies is similar to the subject matter jurisdiction limitations that apply to this Court, which by its nature is not a court of general jurisdiction. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir.1991) ("[T]he lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte.*")

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). From the Supreme Court's decision in *Exxon Mobil*, the Second Circuit has set forth the following four requirements for the application of the *Rooker–Feldman* doctrine:

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*Hoblock*, 422 F.3d at 85.

▮ In this case, the procedural requirements for the application of the *Rooker–Feldman* doctrine are easily met. The Plaintiff sued the State of Connecticut and lost in *Kinney v. State*, 285 Conn. 700, 941 A.2d 907 (2008). This present action involves the same parties. In addition, the Connecticut Supreme Court issued its decision on March 4, 2008. This present action was filed on September 4, 2008. Thus, the state-court judgment was rendered before the Plaintiff initiated this federal lawsuit, which cannot be considered a parallel case to the state-court litigation.

▮ This leaves, then, the substantive requirements for the application of the *Rooker–Feldman* doctrine: "1) the federal plaintiff must complain of injury from a state-court judgment; and 2) the federal plaintiff must seek federal-court review and rejection of the state-court judgment." *Hoblock*, 422 F.3d at 85. The *Rooker–Feldman* doctrine does not deprive a district court of subject-matter jurisdiction

simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id.* at 86 (internal quotation marks omitted). On the other hand, "*Rooker–Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Id.* at 86–87. "The key to resolving this uncertainty lies in the second substantive *Rooker–Feldman* requirement: that federal plaintiffs are not subject to the *Rooker–Feldman* bar unless they complain of an injury caused by a state judgment." *Id.* at 87.

Based on the above law, the Court believes that the Plaintiff is complaining of injury from a state-court judgment. She is alleging that the Connecticut Supreme Court's decision violated the U.S. Constitution by depriving her of the right to receive benefits and enforce "her rights." That is to say, the Plaintiff alleges that the state-court decision itself caused her injuries of a constitutional magnitude. Therefore, the Court finds that this substantive requirement for the application of the *Rooker–Feldman* doctrine, namely, whether the Plaintiff is complaining of an injury from a state-court judgment, is satisfied.

This leaves the question of whether the Plaintiff is actually seeking federal-court review and rejection of the state-court judgment. It is true that the Plaintiff is not asking this Court to directly reverse the decision of the Connecticut Supreme Court by finding S.A. 94–13 to be valid under the Connecticut Constitution. Asking for such a direct reversal, however, is not the only way in which a plaintiff can seek review and rejection of a state-court decision. If the "federal constitutional claims, even if not raised in state court, are 'inextricably intertwined' with the challenged state-court judgment . . ., a federal district court lacks jurisdiction over such claims because the district court is in essence being called upon to review the state-court decision." *Id.* at 86 (internal quotation marks omitted). Here, the Plaintiff is asking the Court to: (1) review a decision from the Connecticut Supreme Court; and (2) find it to be unconstitutional. This Court does not have jurisdiction to conduct an appellate review of a decision from a state supreme court. *See* 28 U.S.C. § 1331. Rather, the appellate review of a decision from a state supreme court is the exclusive jurisdiction of the U.S. Supreme Court. *See* 28 U.S.C. § 1257.

In short, the Court finds that the *Rooker–Feldman* doctrine bars the Plaintiff's claims insofar as they are based on the alleged injuries caused by the decision in *Kinney v. State,* 285 Conn. 700, 941 A.2d 907 (2008). As a result, her claims cannot stand. Consequently, with regard to the Plaintiff's allegations regarding the Connecticut Supreme Court's decision in *Kinney v. State,* 285 Conn. 700, 941 A.2d 907 (2008), the Defendants' motion to dismiss is granted.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss (**dkt. # 12**) is GRANTED. Counts One and Two of the Plaintiff's complaint are hereby **DISMISSED. The Clerk shall close this file.**